UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

__David J. Greene__

   v.          Case No. 21-cv-0457-PB
               Opinion No. 2022 DNH 010
__Dell Financial Services, LLC__

CORRECTED
MEMORANDUM AND ORDER

  David Greene has sued Dell Financial Services, alleging violations of two federal statutes.  In response, Dell asks me to compel Greene to arbitrate his claims and either stay or dismiss his complaint.  Dell relies on an arbitration clause in the agreement Greene signed when the parties arranged for Dell to finance his purchase of computer equipment.  Greene contends that the arbitration agreement is not enforceable and that Dell has waived its right to arbitrate his claims.  Alternatively, Greene maintains that the suit fits within an exception to the arbitration agreement.  I disagree with each of Greene's contentions and grant Dell's motion to compel arbitration and stay the complaint.

I.  BACKGROUND

  In early 2020, David Greene agreed to finance the purchase of Dell computer equipment through Dell Financial Services.  Compl., Doc No. 1, ¶ 13.  The parties' arrangement was solemnized in Dell's "Preferred Account Credit Agreement," which

outlines their bargain and includes the relevant arbitration

clause.  The first bit of pertinent language within the clause

addresses which disputes the parties agreed would be arbitrated:

> Except as expressly provided herein, any claim,
> dispute or controversy (whether based upon contract,
> tort, intentional or otherwise, constitution, statute,
> common law, or equity and whether pre-existing,
> present or future including initial claims, counter-
> claims, cross-claims and third-party claims), arising
> from or relating to you applying for, obtaining, or
> using this Account, this Agreement (including the
> validity or enforceability of this arbitration clause,
> any part thereof or the entire Agreement), or the
> relationships which result from this Agreement
> ("Claim") shall be decided, upon the election of you
> or us, by binding arbitration pursuant to this
> arbitration provision . . . . We agree not to invoke
> our right to arbitrate any individual Claim you bring
> in small claims court or an equivalent court so long
> as the Claim is pending only in that court . . . .

See Def.'s Memo, Doc. No. 7-1, 2.  The arbitration agreement

also states that:

> The arbitrator shall have the sole and exclusive
> authority to resolve any dispute relating to the
> enforceability of this arbitration provision including
> any unconscionability challenge or any other challenge
> that the Agreement or the arbitration provision is
> void, voidable, or otherwise invalid.

Doc. No. 7-1, 10.  And the final relevant section

emphasizes -- in all caps, bolded text -- that:

> You acknowledge that if a claim arises you may be
> required to resolve the claim through arbitration and
> are giving up your rights to litigate that claim in a
> court or before a jury or to participate in a class
> action or representative action with respect to such a
> claim.  Other rights that you would have if you went
> to court may also be unavailable or may be limited in
> arbitration.  Doc. No. 7-1, 10.

A few months after Greene signed the agreement, Dell
started charging late fees to his account.  Compl., Doc. No. 1
¶ 18.  Greene believed the fees were unjustified -- his payments
were mailed before (but arrived after) the due date -- and he
demanded that Dell explain itself.  Doc. No. 1 ¶ 19.  Dell
elected to waive the first late fee but, faced with an adamant
Greene, charged fees for several subsequent months.  Doc. No. 1
¶¶ 21-22.  Fed up with the charges to his account, Greene wrote
to Dell to explain that if he incurred another fee, he would
"construe [it] as an unfair debt collection."  Doc. No. 1 ¶ 24.
He also warned Dell not to phone him again, saying that any call
would be "harassment."  Doc. No. 1 ¶ 26.  Dell then called
Greene three times in four days.  Doc. No. 1 ¶¶ 28-30.

Greene, sensing the direction this affair was headed, chose
to preemptively ask Dell to document the disputed nature of his
outstanding fees in any report it made to the credit bureaus.
Doc. No. 1 ¶ 27.  Dell's subsequent reports, however, did not
mention his quarrel.  Doc. No. 1 ¶ 45.  Unsurprisingly, Greene's
credit score quickly took a hit.  Doc. No. 1 ¶¶ 43-44.

In response, Greene stopped making payments and sued Dell
for violating both the Fair Debt Collection Practices Act and
the Fair Credit Reporting Act.  Doc. No. 1 ¶¶ 12-58.  Dell now
asks me to either direct the parties to resolve their dispute in

arbitration or dismiss Greene's complaint for failing to state a claim. Greene objects to both proposals.

## II. <u>STANDARD OF REVIEW</u>

The First Circuit has yet to identify the proper standard of review for a motion to compel arbitration. Baker v. Montrone, 2020 DNH 006, 2020 WL 128531, at *1 (D.N.H. Jan. 10, 2020). As I have said several times now, "[i]f the answer is apparent on the face of the complaint, the Rule 12(b)(6) standard will suffice. If the court must consult evidence to resolve the issue, the summary judgment standard must be employed." Rosen v. Genesis Healthcare, LLC, 2021 DNH 032, 2021 WL 411540, at *2 (D.N.H. Feb. 5, 2021) (quoting Baker, 2020 WL 128531, at *1). Generally, under Rule 12(b)(6), I may consider "only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered," then I must convert it to a motion for summary judgment. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(d)). Because the parties rely on affidavits and exhibits that cannot be considered in ruling on a motion to dismiss, I will resolve the motion using the summary judgment standard.

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016).  In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (cleaned up).  A "genuine dispute" exists if a jury could resolve the disputed fact in the nonmovant's favor. Ellis v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).  Once the movant has properly presented such evidence, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in its favor." Flovac, 817 F.3d at 853 (cleaned up).  If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted.  See id.  In considering the evidence presented by either party, all reasonable inferences are to be drawn in the nonmoving party's favor.  See Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III. __ANALYSIS__

When parties have agreed to arbitrate their disputes, the
Federal Arbitration Act (FAA) mandates that courts "rigorously
enforce" those agreements "according to their terms," even "for
claims that allege a violation of a federal statute." Am. Exp.
Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (citations
omitted).  Dell first asks me to either dismiss Greene's claims
"as subject to a binding arbitration agreement" or compel Greene
to arbitrate his claims and "stay[] these proceedings in their
entirety pending arbitration" under section 3 of the FAA.  Mot.
to Dismiss, Doc. No. 7, at 1.  In the alternative, Dell asks
that I dismiss the complaint for failing to state a claim upon
which relief can be granted.  Because I conclude that the claims
are arbitrable, I do not address Dell's alternative argument.

The FAA directs courts to treat arbitration agreements as
"valid, irrevocable, and enforceable, save upon such grounds as
exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.  Courts have consistently recognized a strong
federal presumption in favor of arbitration.  See Moses H. Cone
Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).
Even so, "[a]rbitration is strictly a matter of consent, and
thus is a way to resolve those disputes -- but only those
disputes -- that the parties have agreed to submit to
arbitration." Dialysis Access Ctr. v. RMS Lifeline, Inc., 638

F.3d 367, 376 (1st Cir. 2011) (quoting Granite Rock Co. v. Int'l
Bhd. of Teamsters, 561 U.S. 287, 299 (2010)).

     In determining whether to compel arbitration, I must
identify whether there is "a valid and enforceable agreement to
arbitrate between the parties." Air-Con, Inc. v. Daikin Applied
Latin Am., LLC, 21 F.4th 168, 2021 WL 6012458, at *3 (1st Cir.
2021).  The burden is on "[t]he party seeking to compel
arbitration" to establish: (1) the existence of "a valid
agreement to arbitrate," (2) that they are "entitled to invoke
the arbitration clause," (3) "that the other party is bound by
that clause," and (4) "that the claim asserted comes within the
clause's scope." Id. (quoting Soto-Fonalledas v. Ritz-Carlton
San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011)).

     Dell's primary argument is that the parties' agreement and
the FAA require me to compel arbitration.  To support the
validity of the agreement and outline Greene's reasonable
expectations, Dell argues that Greene knew that arbitration
would be the proper forum for resolving his dispute.  It first
notes that after Greene stopped making any monthly payments, he
wrote to Dell to see if it "elects to arbitrate the disputes
that [he has] raised."  Doc. No. 7-1, 3.  Dell also claims that
Greene has referenced the contract -- which includes the
arbitration clause -- at several points along the course of
their dispute.  Doc. No. 7-1, 5.  Greene does not dispute

Dell's assertions.  But he argues in response that Dell cannot compel arbitration because, generally, there was no specific agreement to arbitrate the claims he raised, and, even if there were an agreement, Dell has waived its right to arbitrate by prejudicing him.  He also claims that his lawsuit fits within an exception in the arbitration agreement.  Ultimately, Greene's arguments are unpersuasive.

In the First Circuit, district courts "apply state contract law to determine whether a valid arbitration agreement exists." Air-Con, 2021 WL 6012458, at *3.  The arbitration clause itself has no choice of law provision, and it does not designate a venue where the arbitration would take place.  Instead, it directs that "[i]f a hearing is held, it shall take place within the county or parish in which you live or at such other reasonably convenient location as agreed by the parties." Agreement, Doc. No. 7-3, 10.  Greene does not make any concrete argument that the arbitration agreement is invalid.  And Dell, in pointing out Greene's omission, directs me toward New Hampshire's typical contract law formulation: the need for an offer, acceptance, and consideration.  See generally Decato Bros. v. Westinghouse Credit Corp., 129 N.H. 504, 511 (1987) (outlining essential elements of a contract).  Applying New Hampshire contract law, I find that Dell's credit agreement represented an offer, that Greene accepted, and that the

parties' exchange of consideration -- Dell's financing and
Greene's promise to make later payments -- created a valid
contract.  I will therefore proceed with the understanding that
the contract is valid and that New Hampshire law governs its
scope.

Greene's argument that the agreement is poorly drafted, and
is thereby invalid, is unsupported by the record.  Pl.'s Memo,
Doc. No. 9-1, ¶ 11-35.  And the remaining three questions
(whether Dell can invoke the arbitration clause, whether Greene
is bound by the clause, and whether the two claims are within
the scope of the arbitration agreement) are all answered by
considering the text of the clause.

In New Hampshire, an arbitration clause "is to be
interpreted so as to make it speak the intention of the parties
at the time it was made bearing in mind its purpose and policy."
John A. Cookson Co. v. N.H. Ball Bearings, Inc., 147 N.H. 352,
355 (2001).  Since neither party has provided "evidence of their
intentions," I need only "consider[] the face of the claim at
issue and the terms of the arbitration clauses themselves."  See
CIGNA Health Corp. v. Lencki, No. 06-CV-116, 2006 WL 1424453, at
*3 (D.N.H. May 18, 2006) (citing Cookson, 147 N.H. at 355).
Because this contract includes an arbitration clause, "there is
a presumption of arbitrability" that can be surmounted if I
determine "with positive assurance, that the [contract] is not

susceptible of an interpretation that covers the dispute."  See Cookson, 147 N.H. at 355-56.

Dell correctly argues that the arbitration agreement covers Greene's Fair Debt Collection Practices Act and Fair Credit Reporting Act claims.  The clause covers "any claim, dispute or controversy," including those based on "statute" and "arising from" Greene "using this account," along with any claim arising from "the relationships which result from this agreement."[1] Giving "the language used by the parties its reasonable meaning," the plain meaning of the arbitration agreement encompasses Greene's claims.  See Monadnock Reg'l Sch. Dist. v. Monadnock Dist. Educ. Ass'n, NEA-NH, 173 N.H. 411, 419 (2020). His arguments to the contrary are unpersuasive.

Greene first complains that the language "is intentionally ambiguous" and notes that the "operative portion . . . is 309 words consisting of 23 lines" and contains "heavy legalese."[2]

_____

[1] The clause also requires that any claim about "the validity or enforceability of this arbitration clause" be arbitrated as well.  Because both parties have assumed that the court should resolve their arbitrability dispute, however, I do not address whether the agreement delegates to an arbitrator the authority to resolve those issues.

[2] Greene argues that his invocation of the Fair Debt Collection Practices Act requires me to use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector."  Pl.'s

But considering "the circumstances and the context in which this agreement was negotiated," including the fact that Greene himself is a practicing attorney, I do not agree that the length or language of the clause rendered it ambiguous.  Greene makes only one specific argument in favor of a contrary finding.

Citing a nearly four-decade-old district court opinion, Greene explains that the arbitration clause is ambiguous "because it includes three fused participles."  Greene expresses concern that the words "you applying for, obtaining, or using this Account" upsets his preferred grammatical conventions.  But contracts are not rendered ambiguous simply because of a grammatical error -- many come with their fair share of split infinitives, comma splices, and generous servings of passive voice.  And how this grammatical quirk creates ambiguity in this contract is unclear.  Greene offers no alternative understanding.  This is unlike the case Greene cites, where a pair of judges each formed reasonable, inconsistent interpretations of the same statutory language.  See Cowan by

_____

Memo, Doc. No. 9-1 ¶ 7-10, 20 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)).  Putting aside other potential issues with this argument, the arbitration agreement is simply not a notice from a debt collector.  See 15 U.S.C. ¶ 1692g (outlining the required elements for a "notice of debt.").

Cowan v. Lederle Lab'ys, 604 F. Supp. 438, 442-43 (D. Kan. 1985).

Greene's next argument for why I should find the contract ambiguous is that the arbitration clause does not contemplate a dispute with Dell; instead, presumably, it is limited to disputes with a financial intermediary for the two parties: WebBank.  But as Dell notes, the clause -- as quoted by Greene -- states that "[f]or the purposes of this arbitration provision, the terms 'we' and 'us' shall mean WebBank and Dell Financial Services . . . ."  See Pl.'s Memo, Doc. No. 9-1 ¶ 29 (emphasis added).

Seeing no compelling counterargument, I conclude that Dell may invoke the arbitration clause, that Greene is bound by the clause, and that the claims Greene asserts come within the clause's scope.  See Air-Con, 2021 WL 6012458, at *3.

Even if the arbitration clause is enforceable, Greene reserves two more arguments.  The first is that Dell has waived its right to arbitrate this dispute and the second is that an exception in the arbitration agreement permits Greene's suit.  Both arguments fail.

The first claim is that Dell "by its inaction" has waived its right to arbitrate the dispute.  See Pl.'s Memo, Doc. No. 9-1 ¶ 36.  As "the party arguing waiver," Greene has the burden of showing more than a "mere delay" by Dell in electing to

arbitrate the dispute.  See Toddle Inn Franchising, LLC v. KPJ
Assocs., LLC, 8 F.4th 56, 64 (1st Cir. 2021) (quotation
omitted).  He "must also show at least a modicum of prejudice
too."  Id.  I can consider several relevant factors, "though no
single factor is controlling," including the extent of Dell's
"delay in demanding arbitration," how much Dell "participated in
the litigation, whether significant discovery and other
litigation-related activities occurred, the proximity of
[Dell's] demand to an anticipated trial date, and whether the
arbitration referral prejudiced [Greene]."  See id. (quotations
omitted).  This is, ultimately, "an individualized inquiry,
particular to [this] case's circumstances."  See id.

     Greene does not meet his burden.  He first misunderstands
the type of delay he must identify, suggesting that Dell ought
to have asked for arbitration before submitting derogatory
information to the credit bureaus.  Pl.'s Memo, Doc. No. 9-1
¶ 41.  This just outlines the factual background of the dispute.
And what Greene, perhaps inadvertently, suggests is that Dell
must seek arbitration at the first sign of friction with one of
its customers.  He cites no authority to support that radical
proposition.

     The other factors highlighted in Toddle Inn also favor
Dell's position over Greene's.  Dell moved to compel arbitration
about two months after Greene filed his complaint.  The

litigation was still in its infancy.  This is a far cry from the type of "foot-dragging delay tactics" that have concerned other courts.  See Toddle Inn, 8 F.4th at 64.  In contrast, the court in Toddle Inn presented an example in which a party decided to engage in "many months of active litigation" before "switch[ing] horses midstream to pursue an arbitral remedy."  See id. (quoting Joca-Roca Real Est., LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014)).  Unlike in Joca-Roca, the party seeking to compel arbitration in Toddle Inn had done so within one month.  Id. Greene might argue that the nearly two-month delay in his case is distinguishing, but unlike in this case, the plaintiff in Toddle Inn was the party seeking to compel arbitration.  See id. at 59-60.  If Dell had decided to sue Greene but then "switched horses" and moved to arbitrate, Greene's frustrations would be more justified.  Instead, Greene filed suit, and within a reasonable amount of time, Dell moved to compel arbitration. And before suing, Greene had some idea that arbitration could be on the horizon, asking Dell if it "elects to arbitrate the disputes that I have raised with it."  See Def.'s Ex. A, Doc. No. 7-4.

And just as Greene failed to meet his burden of proving more than a "mere delay," he also did not meet his burden to show prejudice.  He argues that this suit's filing fees represent sufficient prejudice, but this cannot satisfy his

burden.  See Toddle Inn, 8 F.4th at 66.  As Dell notes, if
filing fees were enough to establish prejudice, any lawsuit
could undermine the FAA's clear mandate.  What Greene complains
of "is simply the reality of dispute resolution, whether in
arbitration or litigation," and he "supplies no caselaw" to
support his position.  See id.  Greene had every reason to
suspect that Dell would seek to arbitrate his claims.  If his
desire was to legally test the propriety of the arbitration
agreement, he knew he would have to stake not just the filing
fees but also the many hours of work it takes to prepare a suit.
Greene is not unduly prejudiced by his efforts ultimately
falling short.[3]

In a final volley, Greene asks me to find that his suit
fits within the language of an exception to the arbitration
clause.  He points to Dell's promise "not to invoke [its] right
to arbitrate any individual Claim you bring in small claims
court or an equivalent court."  Pl.'s Memo, Doc. No. 9-1 ¶ 19.

---

[3] Greene also claims that he attached an exhibit to his
memorandum that shows that Dell explicitly waived its right to
arbitrate his claims when, about a month before Greene filed his
complaint, "it wrote [to him] that it already addressed the
issues [he] raised."  Pl.'s Memo, Doc. No. 9-1 ¶ 39-40.  Greene
appears to have forgotten to attach the exhibit, but, taking his
assertion as true, I see no evidence that Dell waived its right
to arbitrate the two specific claims Greene now seeks to bring
before me.  Cf. In re Tyco Int'l, Ltd., 2004 DNH 090, 2004 WL
1151541, at *2 (D.N.H. May 24, 2004).

I do not accept that Greene -- an attorney -- could have reasonably believed that a small claims court is the equivalent of a federal district court.  A more readily apparent explanation is that naming conventions for "small claims" courts are not always consistent, see Barbosa v. Midland Credit Mgmt., Inc., No. CV 18-11997, 2019 WL 3781629, at *2 (D. Mass. July 3, 2019), so the parties' agreement accounts for possible differences in nomenclature.

## IV.   CONCLUSION

Greene has found himself ensnared in the "bite" of a strong federal presumption in favor of arbitration.  See Rosen, 2021 WL 411540, at *9.[4]  I will enforce the parties' agreement to arbitrate these claims and stay this action under section 3 of the FAA and compel arbitration.  Because I find this claim arbitrable, there is no need to consider Dell's alternative request that I dismiss Greene's claims for failing to state a claim.  See Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 288 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019).

---

[4] Greene asks for leave to amend his complaint to "allege causes of action related to the Lanham Act and regulations of publicly traded companies."  Pl.'s Obj., Doc. No. 9, 1.  He does not explain why these claims would have merit, and I believe that they would be just as susceptible to arbitration as the claims at issue today.

Dell's motion to stay this action and compel arbitration (Doc. No. 7) is granted.  The case will be stayed, and the clerk will administratively close the case, subject to reopening at the request of either party, as appropriate, following arbitration.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 26, 2022

cc:  David J. Greene, Esq.
     Pawel Binczyk, Esq.
     Peter Bennett, Esq.